**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **KENT DISTRIBUTORS, INCORPORATED,** | § § § | |
| **Plaintiff,** | § § § | **Civil Action No. 7:26-cv-00076** |
| **v.** | § § | |
| **MAGELLAN PIPELINE COMPANY, L.P.,** | § § § | |
| **Defendant.** | § § | |

---

**KENT DISTRIBUTORS, INCORPORATED'S ORIGINAL COMPLAINT**

---

Plaintiff Kent Distributors, Incorporated ("KDI" or "Plaintiff") files this Original Complaint against Defendant Magellan Pipeline Company, L.P. ("Magellan" or "Defendant").

## I.    INTRODUCTION

1.    KDI and Magellan were previously parties to an agreement under which KDI received reserved capacity in Magellan's pipeline system for shipment of refined petroleum products from South Texas to certain destinations including Odessa, Texas and El Paso, Texas (the "Volume Commitment Agreement").  In exchange for reserved capacity, KDI agreed to ship a certain volume of product each month that the agreement was in effect.  If KDI did not ship at least the agreed volume, KDI was required to make a deficiency payment to Magellan, representing the cost of shipment of any deficiency remaining in its monthly volume commitment.  Thus, whether KDI actually shipped its volume commitment of product or not, it paid Magellan for at least the cost of shipping its volume commitment each month.

2.    The Volume Commitment Agreement, however, provided KDI a benefit in the event it had to make deficiency payments.  Specifically, the Volume Commitment Agreement

---

provided for the deficiency payments to be treated by Magellan as prepaid transportation fees that KDI could use within six months after the deficiency payment was made.  During that six-month window, if KDI shipped a volume of product greater than its monthly commitment, KDI's prepaid transportation fees could be used as prepaid credits to cover charges for shipment of volumes above KDI's volume commitment for that month.

3.    In March 2025, KDI assigned its rights and obligations under the Volume Commitment Agreement to Gresham Petroleum Company but specifically excluded its right to prepaid transportation fees it had accumulated as of the effective date of the assignment.  Magellan and KDI subsequently entered into an agreement pursuant to which Magellan expressly consented to the Assignment and to KDI's retention of its prepaid transportation fees. Magellan also recognized that KDI could use and recoup its prepaid transportation fees going forward, although KDI was no longer a party to and did not retain any rights under the Volume Commitment Agreement.

4.    In the six months following KDI's assignment of the Volume Commitment Agreement, KDI made shipments, the shipping costs for which should have been covered by KDI's prepaid transportation fees.  However, KDI learned in the Fall of 2025 that Magellan was not applying the prepaid transportation fees for those shipments and was instead charging KDI regular shipping costs, directly debiting those charges from KDI's bank account.  KDI subsequently requested that Magellan apply the prepaid transportation fees and reimburse KDI for the charges that it improperly debited from its account.  While Magellan has reimbursed KDI for a small portion of those charges, Magellan still owes over $1.5 million for charges that should have been covered by KDI's prepaid transportation fees.

5.      Thus, KDI files suit to enforce its rights to recoup amounts that Magellan should not have charged for shipments because prepaid transportation fees should have been applied to cover the costs of those shipments.

## II.    PARTIES

6.      Plaintiff Kent Distributors, Incorporated is a Texas corporation with its principal place of business in Midland County, Texas at 3510 N. A Street, Midland, Texas 79705.

7.      Defendant Magellan Pipeline Company, L.P. is a Delaware limited liability partnership with its principal place of business in Tulsa, Oklahoma. Citation may be served on Defendant by serving its registered agent, Cogency Global Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201-3136.

## III.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.      This Court may exercise personal jurisdiction over Defendant because Defendant is registered to conduct business and does conduct significant business within the state of Texas and because the causes of action alleged herein arise out of Defendant conducting business with the state of Texas.

10.      Venue is proper under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions forming the basis of this suit occurred in this judicial district.

## IV.    BACKGROUND FACTS

11.      In May 2018, KDI and Magellan executed the Volume Commitment Agreement under which Magellan reserved capacity in its pipeline system for KDI to ship refined petroleum products in exchange for KDI's agreement to ship a certain volume of product each month.  Once

KDI met its volume commitment, it had the right, but no obligation, to ship additional volumes of product via the pipeline.

12.     Pursuant to the Volume Commitment Agreement, KDI agreed that for any month in which it did not ship at least the required volume of product, KDI would pay Magellan a "Monthly Deficiency Payment" representing the remaining amount it would have paid had it shipped its full volume commitment.  Thus, for each month the Volume Commitment Agreement was in effect, KDI paid Magellan at least the cost of shipping KDI's monthly volume commitment whether KDI shipped that volume or not.

13.     The Volume Commitment Agreement further provided that any Monthly Deficiency Payment paid by KDI would be treated by Magellan as prepaid transportation fees, which Magellan would credit to KDI on a dollar-for-dollar basis for any shipments of product KDI made to any of the destinations under the agreement in excess of KDI's monthly volume commitment.  These "Prepaid Transportation Fees" could be used during the six-month period after the Monthly Deficiency Payment was incurred.  After six months, the unapplied balance of the Prepaid Transportation Fees would become the sole property of Magellan.

14.     The Volume Commitment Agreement further provided that neither party could assign or otherwise transfer the agreement or the party's rights and obligations under the agreement without the prior written consent of the other party, though consent could not be unreasonably withheld.

15.     In March 2025, Kent entered into an agreement to assign its rights and obligations under the Volume Commitment Agreement to Gresham Petroleum Company ("Gresham"), effective April 1, 2025 (the "Assignment').  The Assignment, however, specifically excluded KDI's "rights, claims, title, or interest" in the Prepaid Transportation Fees it had acquired as of the

effective date of the assignment and its right to recoup those Prepaid Transportation Fees for future shipments.

16. On March 19, 2025, Magellan sent a letter agreement consenting to KDI's assignment of the Volume Commitment Agreement to Gresham, subject to the terms and conditions of the letter, which KDI and Gresham countersigned, acknowledging their acceptance and agreement (the "Consent Agreement"). Pursuant to the terms of the Consent Agreement, Magellan expressly consented to KDI's retention of the Prepaid Transportation Fees it had accrued as of the effective date of the Assignment. The Consent Agreement further provided, however, that KDI "shall not retain any rights as "Shipper" under the [Volume Commitment Agreement] on or after" the effective date of the Assignment. Finally, the Consent Agreement provided that "[i]n the event [KDI] desires to utilize or recoup the Prepaid Transportation Fees, [KDI] would do so subject to allocation under Magellan's Pipeline Proration Agreements as a 'New Shipper' or 'Regular Shipper,' as applicable, and not as a 'Reserved Capacity Shipper,' as each term is defined in Magellan's Pipeline Proration Procedures."

17. As of April 1, 2025, KDI had a Prepaid Transportation Fee balance of over four million dollars.

18. Shortly after the effective date of the Assignment, on April 10, 2025, Clayton Gacke, Director of Wholesale Operations at KDI, spoke with Magellan representative Chad Gwinn regarding KDI's utilization of the Prepaid Transportation Fees going forward. During that conversation, Mr. Gwinn confirmed to Mr. Gacke that Magellan would apply KDI's Prepaid Transportation Fees to product KDI shipped via Magellan's pipeline to Odessa, Texas or El Paso, Texas, even if that product was transferred by KDI to another party via a Product Transfer Order ("PTO") in Odessa or El Paso as long as the product was delivered "over the rack."

19.    On April 10, 2025, Mr. Gacke sent a follow-up email to Mr. Gwinn[1], copying Todd Watkins, recapping the conversation.  Mr. Gwinn responded that same day and confirmed that KDI was in fact permitted to transfer product shipped to Odessa or El Paso via PTO (the "Email Agreement").  The Email Agreement is reflected in full below:

| | |
|---|---|
| **From:** | Gwinn, Chad R. |
| **To:** | Clayton Gacke |
| **Cc:** | Todd Watkins |
| **Subject:** | RE: (External) PTOs in Odessa |
| **Date:** | Thursday, April 10, 2025 12:41:53 PM |

Yes sir, that is correct!

Chad Gwinn
Phone: 918-574-7133 | Mobile: 918-430-6235
Email: Chad.Gwinn@oneok.com

**From:** Clayton Gacke <cgacke@kentoil.com>
**Sent:** Thursday, April 10, 2025 11:30 AM
**To:** Gwinn, Chad R. <Chad.Gwinn@oneok.com>
**Cc:** Todd Watkins <twatkins@kentoil.com>
**Subject:** (External) PTOs in Odessa

Chad,

Just recapping our conversation so there isn't any confusion.

We can ship and  pto product in Odessa and El Paso as long as it is loaded over the rack by the party we pto it to.

Thank you,
Clay Gacke

20.    With Magellan's agreement that KDI would be able to utilize its Prepaid Transportation Fees, KDI shipped product via Magellan's pipeline to Odessa and El Paso between April 1, 2025 and September 30, 2025.  Some of those shipments were "loaded over the rack" by

---

[1] Mr. Gwinn's email address and signature block refer to ONEOK, Magellan's parent company. ONEOK acquired Magellan on or around September 25, 2023.

KDI—meaning KDI removed the product from the pipeline when it reached its destination.  Other shipments were shipped by KDI to Odessa and Midland and transferred via PTOs to third parties who subsequently loaded the product over the rack.

21.    In October 2025, KDI realized that Magellan was not applying its Prepaid Transportation Fees to numerous of its shipments.  Instead, Magellan charged KDI for the cost of shipments and debited the charged amounts from KDI's bank account.  KDI subsequently notified Magellan that it believed many of the shipments for which it had been charged and debited should have been covered by its Prepaid Transportation Fees.

22.    On November 4, 2025, representatives of Kent and Magellan met in person in Tulsa, Oklahoma and discussed the charges in detail.

23.    Following the meeting, KDI believed that Magellan would be reimbursing it for the charges that were improperly debited and should have been covered by the Prepaid Transportation Fees.  However, as of December 22, 2025, KDI had not received refund of any of the disputed charges. Thus, KDI's counsel sent a demand letter to ONEOK for the amounts it believed were still owed as of that time.

24.    On December 29, 2025, Magellan's counsel responded to the letter asserting that Magellan was continuing to review the charges but that its position was that KDI had to satisfy certain requirements for Prepaid Transportation Fees to apply.  Some of the charges were for shipments that Magellan admitted were shipped to and from qualifying locations, but to which Magellan refused to apply Prepaid Transportation Fees because the shipments were documented in Magellan's system with an "incorrect origin number."  Magellan ultimately agreed to credit KDI for charges made on that basis, acknowledging that Prepaid Transportation Fees should have been applied.

25.     The majority of the charges, which Magellan has flatly refused to refund, were for product that was shipped and transferred to third parties via PTO.  Ignoring the terms of the Consent Agreement and the Email Agreement, Magellan has refused to reimburse KDI for the charges on the basis that applying Prepaid Transportation Fees to those charges was inconsistent with the express terms of the Volume Commitment Agreement, an agreement to which KDI is no longer a party, and the parties' prior course of dealing under that agreement.

26.     Following the December 29 letter, Magellan has refunded KDI for some, but not all, of the charges to which it had previously refused to apply Prepaid Transportation Fees due to the incorrect origin issue, but Magellan has not refunded KDI any amount for the charges it refused to apply Prepaid Transportation Fees to because the shipments were transferred by PTO.

27.     As of the filing of this Original Petition, Magellan owes KDI approximately $1,500,000 to refund payments for shipments that should have been covered by KDI's Prepaid Transportation Fees.

### V.     CAUSE OF ACTION I: BREACH OF CONTRACT

28.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

29.     The Consent Agreement and the Email Agreement are valid and enforceable contracts (together, the "Agreements").  KDI is a proper party to bring suit for breach of the Agreements.

30.     KDI performed its obligations under the Agreements.

31.     Magellan breached the Agreements by refusing to apply KDI's Prepaid Transportation Fees as credit for shipping charges pursuant to the terms of the Agreements and improperly debiting KDI's bank account for those charges.

32.     Magellan's breach deprived KDI of the benefit of the Agreements and caused KDI economic damages, namely by causing KDI to incur charges for services for which it was entitled to use its Prepaid Transportation Fees.

### VI.     CAUSE OF ACTION II: PROMISSORY ESTOPPEL

33.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

34.     In the alternative, KDI is entitled to recovery for promissory estoppel.

35.     Magellan made promises to KDI that KDI could utilize and recoup its Prepaid Transportation Fees following Gresham's assumption of the Volume Commitment Agreement. Magellan further promised KDI that it could utilize Prepaid Transportation Fees for shipments to Odessa or El Paso that were transferred via PTO to third parties.

36.     KDI reasonably and substantially relied on Magellan's promises to its detriment by making shipments of product via Magellan's pipeline for which KDI reasonably believed it would be credited its Prepaid Transportation Fees, including but not limited to product that it transferred via PTO to third parties.

37.     KDI's reliance was foreseeable to Magellan.

38.     Despite Magellan's promises, Magellan refused to apply KDI's Prepaid Transportation Fees to numerous shipments, instead improperly charging and debiting KDI's bank account for those shipments and retaining KDI's Prepaid Transportation Fees, causing damage to KDI.

39.     Injustice can be avoided only by enforcing Magellan's promise.

### VII.     CAUSE OF ACTION III: MONEY HAD AND RECEIVED

40.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

41.     In the alternative, KDI is entitled to recovery under the equitable doctrine of money had and received.

42. Magellan holds money which in equity and good conscience belongs to KDI.

43. KDI paid Magellan Monthly Deficiency Payments for shipments it did not make. Those Monthly Deficiency Payments became Prepaid Transportation Fees that totaled over four million dollars at the time that Gresham assumed the benefits and obligations of the Volume Commitment Agreement.

44. Magellan consented to KDI's retention of KDI's right to recoup its Prepaid Transportation Fees after the Volume Commitment Agreement was assigned to Gresham.

45. When KDI made shipments for which it intended to use its Prepaid Transportation Fees, Magellan erected barriers to KDI's use of the Prepaid Transportation Fees and instead charged KDI additional amounts for those shipments.

46. Thus, Magellan is in possession of both KDI's uncredited Prepaid Transportation Fees and the additional amounts Magellan debited from KDI's accounts for the shipping charges KDI incurred to which Prepaid Transportation Fees were not applied.

47. As a result, Magellan has been unjustly enriched.

48. In equity and good conscience, KDI is the party to which the payments that should have been covered by Prepaid Transportation Fees belong.

## VIII.   CONDITIONS PRECEDENT

49. All conditions precedent to KDI's filing of this lawsuit have been performed, have occurred, or have been waived.

## IX.   ATTORNEYS' FEES

50. Because of Magellan's actions, KDI has been forced to retain the undersigned counsel to file this action to protect KDI's rights. Therefore, KDI pleads for an award of its reasonable and necessary attorneys' fees under Section 38.001(8) of the Texas Civil Practice and Remedies Code and any other applicable law providing for such.

## X.    JURY DEMAND

51.    KDI asserts its constitutional right and demands a trial by jury on all issues in this case.

## XI.    PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff Kent Distributors, Incorporated requests Defendant Magellan Pipeline Company, L.P. be cited to appear and that Plaintiff be awarded:

1.    Actual damages in an amount to be proved at trial;

2.    Attorneys' fees;

3.    Pre-judgment and post-judgment interest as provided by law;

4.    Costs of suit; and

5.    Such other relief, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**WEISBART SPRINGER STORM HATCHITT, LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By:  /s/ Geoffrey D. Weisbart
Geoffrey D. Weisbart
Texas Bar No. 21102645
gweisbart@weisbartspringer.com
Julie A. Springer
Texas Bar No. 18966770
jspringer@weisbartspringer.com
Colleen Murphey
Texas Bar No. 24102258
cmurphey@weisbartspringer.com

**ATTORNEYS FOR PLAINTIFF**
**KENT DISTRIBUTORS, INCORPORATED**